**David Kevin JUSTICE, Petitioner–Appellant,**

v.

**Robert HOKE, Superintendent, Eastern Correctional Facility, Respondent–Appellee.**

No. 1393, Docket 95–2508.

United States Court of Appeals, Second Circuit.

Argued May 16, 1996.

Decided July 19, 1996.

Andrew C. Fine, New York City (Daniel L. Greenberg, The Legal Aid Society, Criminal Appeals Bureau, New York City, of counsel), for Petitioner-Appellant.

Nancy F. Talcott, Assistant District Attorney, Brooklyn, NY (Charles J. Hynes, District Attorney, Kings County, Roseann B. MacKechnie, Assistant District Attorney, Brooklyn, NY, of counsel), for Respondent-Appellee.

Before: MESKILL and MINER, Circuit Judges, and LASKER, District Judge.[1]

1. The Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation.

LASKER, Senior District Judge:

David Kevin Justice appeals from an order and judgment of the United States District Court for the Eastern District of New York, denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A portion of the writ, relating to a separate claim regarding jury instructions, was granted by the district court on May 19, 1994, but later reversed by this court on January 10, 1995. The district court's first order and judgment did not render a decision on Justice's second claim, that he had been denied his right to present a defense as a result of the trial court's refusal to allow two defense witnesses to testify. Justice renewed his petition on the second claim, and the district court denied the writ on July 18, 1995. The district court also denied Justice's application for a certificate of probable cause on August 16, 1995. This court granted the motion for a certificate of probable cause pursuant to 28 U.S.C. § 2253 and Rule 22(b) of the Federal Rules of Appellate Procedure on November 14, 1995. Justice now appeals the district court's second order and judgment. The judgment of the district court is reversed.

### I.

Justice's petition for a writ of habeas corpus alleges that the trial court's refusal to allow the testimony of two defense witnesses deprived him of his constitutional right to present a defense. Justice contends that these witnesses at issue would have corroborated his defense that the complainant had a motive to fabricate his accusations and, more importantly, would have undermined the complainant's allegations against Justice.

Based solely on the allegations of complaining witness George Locke, Justice was indicted in Kings County for first degree robbery, pursuant to N.Y. Penal Law § 160.15, and for intimidating a witness in the third degree, pursuant to N.Y. Penal Law § 215.25.[2] Locke, a jewelry maker who bought gold and scrap jewelry, reprocessed it, and used it to make his own jewelry, conducted his business in his Brooklyn apartment. Justice allegedly sold gold to Locke approximately twice a week for two years before October 3, 1987, when Justice allegedly entered Locke's apartment and robbed him of jewelry and money at gunpoint. Later that day, Justice allegedly threatened Locke to prevent him from pressing charges. Following a jury trial in Kings County Supreme Court, in which Locke was the only witness for the prosecution, Justice was convicted of both crimes and sentenced to consecutive terms of 12½–25 years and 2–4 years, respectively.

At trial, Michael Lyons testified for the defense that he had known Locke for two years and had a "business relationship" with him. The court then called a sidebar, and after hearing argument, conducted an *in camera* examination of Lyons. Lyons testified that Locke paid him for selling drugs and that Justice collected the proceeds for Locke. Lyons further testified as follows:

[LYONS]: eventually [Locke] ain't give us our right amount of money.... So the little bit of money we gave to Kevin [Justice] to give to him. Kevin gave us a little bit, little salary off of that and then I don't know, George [Locke] must have got into something about that.

THE COURT: Why do you say that?

[LYONS]: Because I hear that ... the money he is supposed to give to George, he gave to us.

THE COURT: Who gave to you?

[LYONS]: Kevin gave the money that we gave him to give to George. He paid us off with it.

. . .

THE COURT: How do you know he didn't give it to Mr. Locke?

[LYONS]: Because Mr. Locke had to give us our pay and he didn't give us our pay, so Kevin gave us our pay.

(Joint App. at 37–38.) The trial court ruled that Lyons'

testimony ... is of an impeaching nature, going to the character and the criminal proclivities of Mr. George Locke .... it's

---

2. Justice was also charged with first degree burglary and two additional counts of intimidating a witness in the third degree; these charges were dismissed at the close of evidence at his trial.

collateral to the issue.... I have heard nothing from [Lyons] which would indicate that he has any firsthand knowledge of any contretemps or arguments between the defendant and George Locke which would lead the jury to conclude that George Locke, as a result of being injured ... by Mr. Justice, would have a motive for revenge or bias.

(Joint App. 38–39.) The court concluded that Lyons' testimony was "pure conjecture" and excluded the testimony as collateral evidence. (Joint App. at 40.)

Following Lyons' curtailed testimony, Justice testified that Locke was a crack dealer, that Locke paid him to collect proceeds of crack sales from Lyons, Ebbie Newman, and two other street dealers who were friends of Justice, and that he delivered the proceeds to Locke. Justice testified that the day before the alleged robbery, he collected money from the dealers, but did not turn it over to Locke. Instead, he gave half of the money back to the street dealers and kept the other half for himself because he believed that Locke was not adequately compensating his friends. Justice testified that Locke fabricated the accusations against him in retaliation for his withholding of the drug sale proceeds. On cross-examination Locke denied that he had previously quarreled with Justice, that he had any connection with Justice unrelated to his jewelry business, and that he had any involvement in crack dealing.

Following Justice's testimony, Newman was called as a witness for the defense. The trial court again called a sidebar, at which defense counsel made an offer of proof that Newman would testify about a conversation he had with Locke himself, in which Locke told Newman that Justice owed Locke money. (Joint App. at 62–64.) The court ruled that the proffered testimony was inadmissible because it would provide only circumstantial evidence of Locke's hostility toward Justice and whether Locke had made a false accusation:

[I]f you want to show bias, ... you have to show it directly, not circumstantially, and just the fact that Locke [said] ... he owes me the money, is he going to pay it, certainly doesn't support the inference, A, that he was angry at him and, B, that he was going to falsely charge him or that he had already falsely charged him.

(Joint App. at 64.)

Justice then moved to recall Lyons, and the court denied the motion. In response to counsel's argument that Lyons' testimony should be admitted because Justice had testified as to facts which Lyons would corroborate, the court ruled that "that these are false charges motivated solely by a desire for revenge ... didn't come out of the complainant. Didn't come out of the defendant's testimony. So you can't support something that didn't come out...." (Joint App. at 76.)

In its denial of Justice's second petition for a writ of habeas corpus, the district court stated that the witnesses

could only provide only hearsay testimony ... as corroboration for Locke's alleged motive to falsify the robbery charges.... Petitioner did not have a right to call a witness who was not ... capable of testifying to events that he had personally observed.... While [the] evidence [regarding Locke's crack dealings] would have corroborated a part of petitioner's barely plausible story, [its] exclusion ... does not rise to the level of a Due Process Clause Violation.

(Joint App. at 12.)

Justice then petitioned for a certificate of probable cause, which was denied by the district court judge, who stated:

Shorn of hearsay and speculation, what remained of the testimony of [Lyons'[3]] and the presumably similar testimony of [Newman] was a story that was materially inconsistent[4] with petitioner's testimony and

---

3. The district court incorrectly referred to the testimony as Locke's.

4. The inconsistency between Justice's and Lyons' testimony involved the manner of compensation. Justice testified that the street sellers would take their commission out of the proceeds before handing over the remaining money to Justice. Lyons testified that "he [Locke] gave, like George weekly, he would pay [Lyons and the other sellers] bi-weekly, depends on how much drugs we knock off for him and we get our pay." (Joint App. at 36–37.)

that, consequently, provided the most attenuated corroboration for petitioner's version of the alleged dispute between himself and Locke. While I would have allowed this testimony to be admitted . . . I was unable to conclude that its exclusion would have "created a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist."

The same is true of . . . the testimony of Ebbie Newman. . . . [W]hile a statement by Locke that petitioner owed him money could provide a basis for suggesting that he had a grievance against petitioner, it did not do so in a compelling way [because it did not] support the inference . . . that he was angry at him and . . . that he was going to falsely charge him.

(Joint App. at 17–18 (citations omitted)).

## II.

Justice argues that the exclusion of Lyons' and Newman's testimony deprived him of his constitutional right to present a defense. He asserts that it is "highly probable" that the excluded testimony would have changed the jury's verdict by substantiating Justice's defense of fabrication and creating a reasonable doubt that did not otherwise exist. Justice argues that the proffered testimony regarding the crack dealing arrangement was based on each witness' personal knowledge, and thus did not constitute inadmissible hearsay. Justice further argues that neither Lyons' nor Newman's testimony was collateral because it would not merely have contradicted Locke's testimony, but provided strong support for Justice's contention that Locke fabricated his accusations in retaliation for Justice's withholding of drug sale proceeds.

Justice stresses that Newman's testimony would have shown that Locke was aware of the withholding, since Locke stated directly to Newman that Justice owed him money. Justice argues that Newman's testimony was admissible because it was not being offered for its truth, but to establish Locke's belief or state of mind at that time. Finally, Justice asserts that the district court correctly rejected the state trial court's ruling that circumstantial evidence of bias is inadmissi-

ble and that there is no New York evidentiary rule barring such evidence.

The State contends that Justice was not denied a fair trial and that the excluded evidence would not have created a reasonable doubt that did not otherwise exist. The State asserts that the testimony was correctly excluded because neither Lyons nor Newman could establish that Justice had withheld money from Locke, that Locke was aware of such a withholding, or that Locke sought revenge. The State argues that the testimony was inadmissible hearsay because "[t]he purported demonstration of Locke's motive to lie could be achieved only by asking jurors to assume the truth of the matter asserted by the hearsay declarant—that petitioner did, in fact, usually turn the witnesses' drug proceeds over to Locke, but that he did not do so on the day before the robbery." The State stresses that the trial court properly excluded their testimony as being "too remote and speculative" because

neither witness knew if petitioner had, in fact, withheld money from Locke. More importantly, . . . neither witness knew whether Locke was aware that petitioner had stolen from him or whether Locke sought revenge as a result of petitioner's actions. Both men could testify only that they had been employed by Locke to sell crack, and that they would give the proceeds of their drug sales to petitioner.

The State concludes that "[s]uch testimony was neither material nor vital to the defense."

## III.

Whether the exclusion of Lyons' and Newman's testimony violated Justice's right to present a defense depends upon whether "the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976). Thus, where "the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.* at 113, 96 S.Ct. at 2402.

In the present case, Locke was the only witness for the prosecution, and his testimony was both uncorroborated and inconsistent with his prior statements.[5] Thus, competent evidence establishing that Locke had a motive to fabricate the charges was of significant importance, and its exclusion could certainly have rendered the verdict questionable. We find that the excluded testimony could have raised a reasonable doubt that did not otherwise exist because it would not only have challenged the sole prosecuting witness' version of the facts, but would have tended to establish his bias.

■ Of course, evidence of a witness' bias must be competent to be admissible, and the trial court has broad discretion to curtail exploration of collateral matters. *See People v. Hudy,* 73 N.Y.2d 40, 56, 538 N.Y.S.2d 197, 535 N.E.2d 250 (1988). Nevertheless, "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground." *Id.*

In *Rosario v. Kuhlman,* 839 F.2d 918, 925–26 (2d Cir.1988), we held that the determinative question in deciding whether extrinsic evidence contradicting a witness' testimony is admissible is not whether the contradicting extrinsic evidence is material or collateral, but whether the assertion that the impeaching party seeks to contradict is itself material or collateral. The *Rosario* court followed the rule articulated by the New York Court of Appeals in *People v. Schwartzman,* 24 N.Y.2d 241, 299 N.Y.S.2d 817, 247 N.E.2d 642, *cert. denied,* 396 U.S. 846, 90 S.Ct. 103, 24 L.Ed.2d 96 (1969), that "a fact is not a collateral matter if it could be shown in evidence for any purpose independent of the contradiction." *Rosario,* 839 F.2d at 926 (quoting *Schwartzman,* 24 N.Y.2d at 246, 299 N.Y.S.2d 817, 247 N.E.2d 642). Applying that test in *Rosario,* we found that a trial court's exclusion of a defense witness' testimony on the ground that it was collateral was not justified because the testimony would have directly undermined the plausibility of a purported eyewitness' claim that he had observed the crime.

The conviction in the present case, like that in *Rosario,* rests entirely upon the testimony of one witness, Locke. Justice's argument, that Locke's testimony that he was not involved in dealing crack was material because it provides the foundation for Justice's defense theory, is persuasive. Justice's defense rested on the alleged business relationship between Locke, himself, Lyons, and Newman. The testimony of the latter two, concerning their employment by Locke to sell crack, would have undermined Locke's testimony that he had no such business arrangement with Justice, Lyons, and Newman.

■ It is evident from Lyons' *in camera* testimony that he did not have direct knowledge about whether Justice withheld drug sale proceeds from Locke before the alleged robbery, whether Locke believed that Justice had done so, or whether Locke wanted to retaliate. The State is correct that the "jurors [would have had] to assume the truth of the matter asserted by [Lyons]—that petitioner did, in fact, usually turn the witnesses' drug proceeds over to Locke, but that he did not do so on the day before the robbery." Accordingly, Lyons' testimony concerning the alleged dispute between Justice and Locke was correctly excluded as inadmissible hearsay.

However, Lyons did have direct knowledge of the alleged crack dealing arrangement between Locke, Justice, and himself, and his testimony as to that arrangement corroborated the foundation of Justice's defense. Lyons' testimony was not "attenuated," but materially relevant, because it would have established that a business relationship existed between Justice and Locke, which provided the basis for Justice's defense of fabrication. Thus, the trial court erred in excluding

5. In his October 3 statement to the police, Locke indicated that he knew Justice "from the street" and not through a business relationship, that he was alone in the apartment at the time of the robbery, and that Justice forced his way into the apartment at gunpoint and stole cash and jewelry. Before the grand jury, Locke testified that only money was taken. At trial Locke testified that he voluntarily let Justice in to retrieve jewelry, that his girlfriend was sleeping in an adjacent room during the robbery, and that Justice led him at gunpoint to another room before taking cash, coins, and raw gold and jewelry.

Lyons' testimony about Justice's relationship with Locke.

▇ Newman also had direct knowledge of the alleged crack dealing arrangement, and Newman, like Lyons, could testify that Locke employed him to sell drugs and that Justice collected the proceeds. More importantly and quite significantly, Newman would have testified that Locke told him that Justice owed him money and that Locke wanted to find Justice because he wanted his money. Because it would have corroborated, through the mouth of the sole prosecution witness, Justice's own testimony, it was error to reject its admission.

Had Lyons and Newman been allowed to testify, a jury could have reasonably concluded that Justice, Lyons, and Newman sold crack for Locke and that a dispute between Locke and Justice arose out of that relationship. Lyons' and Newman's testimony would have corroborated key portions of Justice's defense, and the jury could have concluded that the dispute motivated Locke to fabricate allegations against Justice. Locke's testimony that he had not employed Justice to collect drug sale proceeds and was not involved in a dispute with Justice over money was material, if not critical, and Justice's offer to contradict Locke's assertion with extrinsic evidence should have been allowed. We conclude that Justice's defense theory was plausible and that the exclusion of relevant and competent testimony which would have corroborated Justice's defense could have raised a reasonable doubt that did not otherwise exist.

*People v. Ayers,* 161 A.D.2d 770, 771, 556 N.Y.S.2d 659 (2d Dep't 1990), cited by the State, is distinguishable. In *Ayers* the court correctly excluded evidence of a witness' civil complaint against the detective and the city as speculative because the injuries sustained by the witness were the result of another officer's actions. In the present case, the proffered testimony involved Locke himself, and not an unrelated third party.

▇ New York's evidentiary rules do not bar the introduction of circumstantial evidence of a witness' hostility or bias, and therefore, there was no basis for the exclu-

sion of Newman's testimony as circumstantial evidence. In *People v. Hudy,* 73 N.Y.2d at 57, 538 N.Y.S.2d 197, 535 N.E.2d 250, the Court of Appeals held that a trial court's preclusion of cross-examination questions regarding an investigating officer's testimony, coupled with the admission of a prior sexual allegation against the defendant, skewed the case in favor of the state and constituted reversible error. The Court stressed that the questions at issue in *Hudy* should have been allowed because they went to a possible reason for fabrication of sexual assault charges by the child witnesses and concerned more than the investigating officer's credibility. *See also People v. Thomas,* 46 N.Y.2d 100, 105, 412 N.Y.S.2d 845, 385 N.E.2d 584, *appeal dismissed,* 444 U.S. 891, 100 S.Ct. 197, 62 L.Ed.2d 127 (1979) (officer's hostility toward defendant who had filed civilian complaint may be shown to affect officer's credibility); *People v. Murtha,* 63 A.D.2d 579, 404 N.Y.S.2d 627, 629 (1st Dep't 1978) (defendant's defense was that driver fabricated larceny allegation to avoid being charged with driving with suspended license, and evidence that driver's license was suspended should have been allowed).

In the present case, evidence of Locke's motive to fabricate the allegations against Justice should have been admitted for the purpose of showing bias. Contrary to the State's contention that Justice "sought to put Locke on trial for selling crack as a means of showing that ... he was not a credible person [and] that ... a crack dealer has no right to complain about being a crime victim," the testimony in the present case was offered to establish a foundation for Justice's defense of fabrication, and not merely to paint Locke as a dishonest witness.

▇ Finally, the district court's concurrence with the trial court's observation that it was implausible that Locke would approach the police to deal with a "falling out" with Justice raises a credibility, not an evidentiary, issue which is not relevant to the trial court's decision whether to allow Lyons' and Newman's testimony. Assuming that Locke was aware of Justice's prior convictions, any risk Locke assumed paid off—the conviction resulted in a 12½ to 25–year sentence for

Justice, who had been adjudged a persistent violent felony offender.

Lyons' and Newman's testimony should not have been excluded as collateral, hearsay, or circumstantial evidence. Because the testimony regarding Locke's motivation to fabricate the allegations against Justice could have raised a reasonable doubt regarding the truthfulness of Locke's allegations, its exclusion violated Justice's right to present a defense, and the writ of habeas corpus should have been granted.

The judgment of the district court is reversed, and the case is remanded to that court to order petitioner's release unless the state promptly affords him a new trial within a reasonable time.