**Marc John HARRINGTON,
Petitioner–Appellee,**

v.

**Andrew J. JACKSON, Respondent–
Appellant.**

No. 99–2176.

United States Court of Appeals,
Sixth Circuit.

Jan. 10, 2001.

Before BATCHELDER, COLE, and GIBSON,* Circuit Judges.

## OPINION

COLE, Circuit Judge.

Petitioner Marc John Harrington ("Petitioner") sought a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (1994). Petitioner alleges that the state trial court violated his constitutional rights to present a defense and to confront witnesses against him. The district court granted the writ on the basis that the trial court's decision to prohibit Petitioner's rebuttal witness from testifying was a violation of Petitioner's right to present a defense. Respondent Andrew J. Jackson, the warden of Huron Valley Men's Facility, appeals the grant of Petitioner's habeas writ, arguing that there was no constitutional violation, and, if there was, it was harmless error. For the following reasons, we REVERSE the district court's grant of Petitioner's writ of habeas corpus.

---

* The Honorable John R. Gibson. United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I. BACKGROUND

A jury tried Petitioner on charges of first-degree murder and assault with intent to do great bodily harm. The incidents giving rise to the charges took place in the Park Avenue Hotel in Detroit, Michigan, where Petitioner lived with his grandmother. Petitioner's parents own and manage the hotel. An altercation erupted in a hotel room between Petitioner and the room's occupants, Chilion Profit and his girlfriend Linda Nawab. Petitioner, either provoked or in self-defense, threw and hit Profit in the head with a television set. Petitioner then fled the room. Nawab followed Petitioner into the lobby. She came armed with a liquor bottle, which she admits she intended to use to assault Petitioner. Petitioner picked up a baseball bat and began to beat her with it, at which point Profit entered the lobby. Whether he was armed and whether he attacked Petitioner first are the subjects of some dispute. It is undisputed, however, that Petitioner beat Profit with a baseball bat and that Profit subsequently died from the injuries Petitioner inflicted.

In his defense. Petitioner argued that Nawab and Profit attacked him in the lobby and that he assaulted them in self-defense. This argument, however, was controverted by the trial testimony of three government witnesses: Linda Nawab: Willie Turner, the night manager at the hotel; and Deirdre Norwood, the godmother of Turner's baby. They all testified that Petitioner struck the first blows and that Profit entered the lobby unarmed. Petitioner sought to call Jerry Jackson as a witness, who would have testified that he knew Profit, Turner, and Nawab; that Turner sold drugs to Profit and Nawab; that they were good friends; and that he had seen them together in Profit's room at the hotel many times. This testimony supposedly would have shown that Turner was biased in favor of Nawab and her version of the events, and that Turner, Norwood, and Nawab were in collusion with one another to secure a guilty verdict. The prosecution objected to Jackson's testimony on grounds that it constituted impermissible impeachment testimony by extrinsic evidence on collateral matters. The trial judge agreed and refused to allow Jackson to testify, ruling that his testimony concerned a collateral matter. On Petitioner's cross-examinations of Nawab and Turner, they both denied knowing one another.

Following Petitioner's conviction and state post-conviction proceedings. Petitioner sought a writ of habeas corpus alleging, *inter alia,* violations of his right to present a defense and his rights guaranteed by Sixth Amendment's Confrontation Clause based on the exclusion of Jackson's testimony. The district court granted a conditional writ of habeas corpus to Petitioner based on its determination that Petitioner's constitutional rights were violated by the court's exclusion of Jackson's testimony and that the error was not harmless. This appeal follows.

## II. DISCUSSION

We review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir.2000). Harrington's petition is reviewed under the standards established in AEDPA, as it was filed after the effective date of that Act. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Harris,* 212 F.3d at 942.

AEDPA provides federal habeas relief for a state court defendant if the state court's decision "resulted in a decision that was *contrary to,* or involved an *unreasonable application of,* clearly estab-

lished Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (emphasis added), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under § 2254(d)(1), a state court adjudication is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). The state's decision involves an "unreasonable application of" Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case," or if the court unreasonably refuses to extend, or unreasonably extends, existing legal principles from the Court's precedents to a new context. *Id.* at 1520. We review the reasonableness of the state court's determination under an objective standard, not a subjective standard. *See id.* at 1520; *Harris*, 212 F.3d at 942–43. Thus, our inquiry is whether, according to Supreme Court precedent, the Michigan trial court violated the Constitution when it prohibited Petitioner from putting his witness on the stand.

### A. Confrontation Clause Analysis

■ The Sixth Amendment to the Constitution guarantees the right of an ac-

cused in a criminal prosecution to be confronted with the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The Supreme Court has already recognized a criminal defendant's constitutional right to cross-examine adverse witnesses as means of unearthing witness bias. *See Davis*, 415 U.S. at 316 (citing 3A J. Wigmore, *Evidence* § 940, at 775 (Chadbourn rev.1970)); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The Supreme Court has held that forbidding any inquiry into a witness's bias is a constitutional violation. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679–80, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also United States v. Stavroff*, 149 F.3d 478, 481 (6th Cir.1998).

In the present case, however, Petitioner does not contend that he was unable to cross-examine Turner fully, but rather that he was not allowed to put on extrinsic evidence of his bias. The Supreme Court has not recognized the sweep of the Confrontation Clause to extend beyond guaranteeing the criminal defendant's rights to physically confront[1] and cross-examine adverse witnesses to encompass the right to impeach an adverse witness by putting on a third-party witness. The state court's decision, therefore, is not contrary to established Supreme Court precedent.

### B. Right to Present a Defense

■ Citing Mich. R. Evid. 608(b),[2] which mirrors Fed.R.Evid. 608(b), the State ob-

---

1. The Confrontation Clause guarantees criminal defendants the rights to be present at their trial, *see United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), and to limit the admissibility of hearsay testimony from unavailable witnesses, *see Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

2. "Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided by Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the wit-

jected to the proffered testimony of Jackson on the ground that collateral matters may not be impeached by extrinsic evidence. Accordingly, the district court refused to allow Jackson to testify to what it deemed to be a collateral matter.

The Supreme Court has recognized that a state has a legitimate interest in preventing minitrials on collateral issues. *See Scheffer*, 523 U.S. at 314. However, according to Federal law, "prior misconduct of a witness which is probative of the bias of that witness may be proved by extrinsic evidence," *United States v. Phillips*, 888 F.2d 38, 41 (6th Cir.1989), although a court, in its discretion, may exclude testimony revealing only an attenuated bias, *see id.* Accordingly, Petitioner argues that the trial court erred in excluding Jackson's testimony and that this error violated his right to present a defense.

The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Like the right to privacy, the right to present a defense is not explicitly granted in the Bill of Rights, but instead derives from the "emanations and penumbras" of the Sixth Amendment rights to compel and confront witnesses, and the Due Process Clause of the Fourteenth Amendment. *Cf. Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (holding that privacy is a penumbral right, formed by the emanations of the First, Third, Fourth, and Fifth Amendments).[3] *See Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90

L.Ed.2d 636 (1986). Inherent in this right to present a defense is the right to present one's own witnesses. *See Chambers*, 410 U.S. at 302; *see also Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.").

Petitioner cites two cases in which the Supreme Court reversed criminal convictions based on a denial of a defendant's right to present a defense. *See Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). These cases involve state trial court decisions that erode either the defendant's interests that the Court has deemed "particularly significant" or "fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 315, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). These cases do not, however, extend the bounds of the right to present a defense as far as Petitioner contends. The Supreme Court has been circumspect when assessing whether the exclusion of certain evidence amounts to a constitutional violation. *See Crane v. Kentucky*, 476 U.S. 683, 689–90, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Tempered by a concern for orderly trial procedure, *see Van Arsdall*, 475 U.S. at 679, the right to present a defense is "subject to reasonable restrictions." *Scheffer*, 523 U.S. at 308, *accord Wong v. Money*, 142 F.3d 313, 325

---

ness (1) concerning the witness' character for truthfulness or untruthfulness. or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." Mich. R. Evid. 608(b).

**3.** The Supreme Court extended these rights to state criminal defendants through the Fourteenth Amendment. *See Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

(6th Cir.1998). We remain unconvinced that unearthing bias by extrinsic evidence is "particularly significant" or a "fundamental element of the accused's defense," especially in light of the fact that Petitioner had sufficient opportunity to unearth bias on cross-examination,

Petitioner urges us to follow the Second Circuit's reasoning in *Justice v. Hoke*, 90 F.3d 43 (2nd Cir.1996), in which the defendant sought to introduce evidence that his accuser, the prosecution's only witness, fabricated his allegation that the defendant robbed his jewelry store as a vendetta for an illicit drug sales collaboration gone sour. *See id.* at 45, 47. The trial court excluded this testimony and the defendant was convicted. *See id* at 45–46. In his habeas petition, the defendant assigned error to this exclusion, arguing that it deprived him of his constitutional right to present a defense. *See id.* at 47. The Second Circuit held that:

> competent evidence establishing that [the witness] had a motive to fabricate the charges was of significant importance, and its exclusion could certainly have rendered the verdict questionable. We find that the excluded testimony could have raised a reasonable doubt that did not otherwise exist because it would not only have challenged the sole prosecuting witness' version of the facts, but would have tended to establish his bias.
> ... " '[E]xtrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground.' "

*Id.* at 48 (quoting *People v. Hudy*, 73 N.Y.2d 40, 538 N.Y.S.2d 197, 535 N.E.2d 250 (N.Y.1988)). As a result, the court granted the defendant's writ. *See id.* at 50.

Even if we were to adopt the Second Circuit's reasoning. *Hoke* is not applicable to the instant case. The defendant in *Hoke* had a solid theory of bias indicating a strong motive for the sole prosecution witness to falsify testimony. In the present case. Petitioner sought to introduce evidence that two of the state witnesses knew each other and the decedent, and that the three used drugs together. We do not find that this "bias," if indeed it is one, suggests a strong motive for Turner to falsify testimony. We therefore conclude that this was not "the exclusion of ... critical evidence ... den[ying Petitioner] a trial in accord with traditional and fundamental standards of due process." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

## III. CONCLUSION

Accordingly, we REVERSE the decision of the district court.