*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0084p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

ERIC SEAN JORDAN,

        *Petitioner-Appellant,*

    *v.*

WARDEN, Lebanon Correctional Institution,

        *Respondent-Appellee.*

No. 10-3064

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 08-00632—Edmund A. Sargus, Jr., District Judge.

Argued: November 30, 2011

Decided and Filed: March 27, 2012

Before: GILMAN, ROGERS, and STRANCH, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** George A. Katchmer, Jr., Yellow Springs, Ohio, for Appellant. William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee. **ON BRIEF:** George A. Katchmer, Jr., Yellow Springs, Ohio, for Appellant. William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Eric Jordan, a prisoner at the Lebanon Correctional Institution in Ohio, appeals from the district court's denial of his petition for a writ of habeas corpus with regard to his convictions for rape and unlawful sexual conduct with a minor. Jordan argues that the state trial court violated his Sixth Amendment rights to present a defense and to confront the witnesses against him when

1

it improperly applied Ohio's rape-shield law.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In February 2006, Jordan was convicted by an Ohio state jury of rape and unlawful sexual conduct with C.A., a friend of his girlfriend's daughter A.P.  Jordan's girlfriend and A.P. lived with him in March 2005, the month of the alleged rape.  At trial, the State presented evidence that C.A. spent the night with A.P. at Jordan's house on Sunday, March 27, 2005 because the girls had a school holiday the next day.  Jordan took A.P. to the house of her friend K.W. the following morning, but C.A. stayed behind, believing that her father would pick her up.  C.A.'s father never came.  She testified that Jordan plied her with alcohol and raped her when he returned from dropping off A.P.  The rape allegedly occurred between 10:00 a.m. and 11:00 a.m. on that Monday morning, and C.A. fell asleep for several hours thereafter.  Around 3:00 p.m., she asked Jordan to take her to K.W.'s house.

Jordan, in contrast, testified that C.A. was not at his house when he left with A.P.  He asserted that he remained away from home until 11:30 a.m.  At 12:45 p.m., he said that C.A. appeared at his house and asked for a ride to K.W.'s house.  Jordan testified that he took C.A. to K.W.'s house and returned home by 1:00 p.m., remaining there until about 2:00 p.m.  According to Jordan, he then picked up A.P. and C.A. when he saw them walking down the street and discovered that they had been smoking marijuana.  He claims that he threatened to tell their parents about the drugs.  At the time, C.A. was on probation for drug use.

Both Jordan and C.A. testified that C.A. subsequently spent Monday night with A.P. at Jordan's house.  C.A. reported the assault to her teacher the following day.  Jordan's defense at trial was not that C.A. consented to having sex with him, but rather that a sexual encounter simply never occurred.  He did not explain his defense theory during opening statements, however, so the government was unaware until later in the trial that Jordan was not going to argue that C.A. consented.

During C.A.'s direct examination, the prosecutor thus engaged in the following colloquy:

> Q.      Are you telling a story?
> A.      Yes.
> Q.      What's the story?
> A.      About how a 28 year old man take my life away from me and ruined my reputation.
> Q.      Have you had problems with this in school?
> A.      Yes, I don't get to talk to none of my friends like I used to cause I think  –  I'm afraid that they look at me different, I think they think of me different.
> Q.      Had you been sexually active before?
> A.      No.
> Q.      This was your first experience with sex?
> A.      Yes.
> Q.      Go ahead and take a second.

Jordan never objected to this testimony. Shortly thereafter, a second exchange took place:

> Q.      I want to ask [one] more question. You said before that this had been your first time.
> A.      Yes.
> Q.      When you were examined was there any tearing?
> A.      They said they seen some and my uterus was badly —
> MR. MCLANE [defense counsel]: I'm going to object to that, Your Honor. I think that calls for a medical conclusion she's not capable of giving.
> MR. WASHINGTON [the prosecutor]:   We would withdraw the question.

Jordan raised no other objections. The State then rested.

On cross-examination, defense counsel tested C.A.'s memory about the timing of the events in question and probed the details of Jordan's conversations with her about her drug use, the clothing and undergarments that she wore on March 25, the pornographic video that she claimed Jordan had showed her, her hospital and counseling interviews after reporting the rape, her drinking habits with A.P., and her probationary sentence for drug use. Defense counsel never asked C.A. about her history of sexual

activity, nor did he attempt to impeach her statement that she had never had sex prior to her encounter with Jordan.

The State subsequently called K.W. as a witness. K.W. discussed C.A.'s arrival at K.W.'s apartment after the alleged rape, including C.A.'s demeanor at the time. The prosecutor also questioned K.W. about C.A.'s and A.P.'s visit later that afternoon to a friend who had drugs and about K.W.'s conversations with Jordan on other occasions. On cross-examination, the following exchange took place between K.W. and defense counsel:

> Q.     Did Crystal ever confide in you that she was having sex with other people?
> A.     Yes.
> MR. HERVEY [the prosecutor]: I'm going to object to that. That's rape shield, that's clearly not permissible.

The court immediately called a bench conference, and the following conversation ensued:

> MR. HERVEY [the prosecutor]: You can't inquire into a victim's prior sexual history.
> MR. FETE [defense counsel]: We're not asking the victim. (Inaudible)
> MR. HERVEY: You can not get into rape shield. You can not touch prior sexual conduct of the victim.
> MR. FETE: (Inaudible) with Gary Woodard.
> MR. HERVEY: It requires a whole prior hearing. It's way out of line.
> MR. FETE: It comes in under credibility because she said it was her first time.
> MR. HERVEY: You can go into character trait or truthfulness. You can not impeach her by specific conduct.
> MR. FETE: Yes, but she testified –
> MR. HERVEY: You can not impeach –
> MR. FETE: She testified on direct that that was her first and only time of having sex.
> THE COURT: I'm going to sustain the motion.
>                                   . . .
> MR. HERVEY [before the jury]: I would make a motion to strike.

> THE COURT: The jury shall disregard the question, the last question and the answer of the witness. The Court rules that that is not information that is appropriate under the Ohio Revised Code.

The jury ultimately returned guilty verdicts on the counts of rape and unlawful sexual conduct with a minor. These convictions were merged for sentencing, and Jordan received a sentence of eight years' imprisonment.

Jordan appealed his conviction to the Ohio Court of Appeals. He challenged the trial court's ruling that denied him the opportunity to present evidence of C.A.'s sexual history through K.W.'s testimony, arguing that the trial court erred and that the State had waived the protections of Ohio's rape-shield law when it chose to introduce evidence about C.A.'s lack of past sexual activity. The Ohio Court of Appeals concluded that "the doctrine of waiver does not apply to this situation," *State v. Jordan*, No. 06 HA 586, 2007 WL 1880029, at *6-7 (Ohio Ct. App. June 22, 2007) (unpublished opinion), and rejected Jordan's challenge on the merits as follows:

> We conclude that the trial court did not abuse its discretion when excluding this evidence. Jordan clearly has an interest in his right to confront the witnesses against him. However, the State also has the interests embodied in the Rape Shield Law. The balance of those interests in this particular case is similar to that in *Gardner*. Here, the issue being disputed was not really consent; rather it was whether Jordan and CA actually engaged in sexual conduct. CA's sexual history has no apparent bearing on this issue. Thus, Jordan's only interest in introducing this evidence is to impeach CA by showing that a largely irrelevant portion of testimony is possibly untruthful. The State's legitimate interests in the things protected by the Rape Shield Law in this case more than balances Jordan's interest in putting this single bit of impeaching evidence before the jury. Accordingly, we cannot conclude that the trial court abused its discretion when it excluded this evidence.

*Id.* at *8. The Ohio Supreme Court denied leave to appeal in November 2007.

Jordan filed a pro se petition for a writ of habeas corpus in federal district court in June 2008, but obtained counsel shortly thereafter and filed a supplemental

memorandum in late August 2008. He raised fourteen issues in his petition, but only the following two are relevant here:

> 4.    The trial court violated Petitioner's due process rights and Petitioner's right to compel and confront witness to rebut testimony that the victim was a virgin. . . . The prosecutor opened the door, thereby waiving the protection of [Ohio Rev. Code §] 2907.02(D) and the trial court violated Petitioner's constitutional right to compel and confront witness[es] as to previous sexual experiences, presenting a defense and laying a foundation to the existence of bruising, to uninflame the jury. . . .
>
> 13.   By violating the due process guarantees incorporated in the rape shield law, the prosecution waived and the complainant acquiesced in the waiver of the confrontation prohibitions of the rape shield law.

Jordan's habeas petition was initially considered by a magistrate judge, who proposed dismissing the petition in a Report and Recommendation issued in December 2009. The judge determined that Jordan had not procedurally defaulted these claims. But the judge also concluded that the Ohio Court of Appeals' decision was not contrary to or an unreasonable application of federal law on Jordan's Sixth and Fourteenth Amendment claims.

Over objections from Jordan, the district court adopted the Report and Recommendation, finding that Jordan's claims were without merit. The court entered judgment for the State in January 2010. It subsequently granted a certificate of appealability on the following issue: "Was petitioner unconstitutionally prohibited from inquiring on cross examination of a prosecution witness whether the alleged victim had stated she had previously had sex?" This timely appeal followed.

## II. ANALYSIS

### A.    Standard of review

We review a district court's legal conclusions in a habeas case de novo and its factual findings under the clear-error standard. *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008). The state-court decision under review is entitled to deference pursuant

to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which is codified at 28 U.S.C. § 2254.  Section 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state-court decision is considered "contrary to . . . clearly established Federal law" if the two are "diametrically different, opposite in character or nature, or mutually opposed."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotation marks omitted).  Alternatively, to be deemed an "unreasonable application of . . . clearly established Federal law," a state-court decision on the merits must be "objectively unreasonable," not simply incorrect.  *Id.* at 409, 412.  The state court's findings of fact are presumed to be correct unless they are rebutted by clear and convincing evidence.  *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007).

Not every constitutional error in a state-court criminal proceeding merits the issuance of the writ under AEDPA.  But those that "undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ."  *Williams*, 529 U.S. at 375 (Stevens, J., concurring).  And, as the Supreme Court has recently clarified, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also id.* at 786-87 ("[A] state prisoner must show that the state court's ruling . . . was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

**B.      Jordan's failure to object to the direct examination of C.A. during trial**

The Sixth Amendment guarantees a criminal defendant the right to confront the prosecution's witnesses through cross-examination, *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted). A prototypical confrontation-clause violation occurs when the witness is unavailable and the defendant did not have an opportunity to cross-examine the witness regarding the proffered testimony. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (explaining that the "admission of testimonial statements of a witness who did not appear at trial" constitutes a confrontation-clause violation "unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination").

Jordan does not argue that he was completely denied the opportunity to cross-examine C.A. The record in fact reflects that defense counsel engaged in a relatively lengthy cross-examination covering most of the topics raised in her direct examination. Although this case does not present a typical confrontation-clause violation, Jordan refers in his appellate brief to his inability to cross-examine the "complainant." We believe that Jordan probably intended to refer to K.W. in this portion of his brief rather than C.A., since the remainder of the brief focuses on the exchange with K.W. But in the event that he may have actually intended the "complainant" to refer to C.A., we conclude that any challenge regarding her cross-examination must fail.

There is no evidence in the record that defense counsel attempted to cross-examine C.A. about her sexual history, and Jordan admits as much. Jordan cannot now base a confrontation-clause error on his trial counsel's strategies or shortcomings in not posing these questions to C.A. Defense counsel also failed to object on rape-shield grounds to the State's questioning of C.A., so there is no trial-court ruling for us to review. As a result, Jordan waived any challenge to the scope of C.A.'s cross-examination. *See Campbell v. Coyle*, 260 F.3d 531, 558 (6th Cir. 2001) (concluding that

the petitioner procedurally defaulted a claim where he failed to object to the testimony at issue during trial and was found to have waived the objection upon appeal); *see also State v. Geboy*, 764 N.E.2d 451, 466 (Ohio Ct. App. 2001) (cautioning that the failure to object at trial may constitute a waiver).

**C.      Constitutionality of the limitations on Jordan's cross-examination of K.W.**

Jordan raises what appear to be two distinct arguments relating to the trial court's imposition of the rape-shield law to limit his counsel's cross-examination of K.W. First, he argues that the trial court should have concluded that the State waived the rape-shield protections by asking about C.A.'s sexual history and thus opened the door to cross-examination on that issue. Because his appellate brief is unclear on this point, we will construe Jordan's argument for the purposes of this analysis as a challenge to the trial court's prohibition against using K.W.'s cross-examination testimony to impeach C.A. about her sexual history. Jordan's second argument is that his trial was rendered fundamentally unfair because the trial court imposed the strictures of the rape-shield law against him, but not against the State during its direct examination of C.A. We will address each point in turn.

### 1.      *Applicable law*

Although the Confrontation Clause protects a defendant's right to cross-examine witnesses, this right is not absolute. Instead, the Constitution guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). The Supreme Court has recognized that "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

One such limit comes in the form of Ohio's rape-shield law, which provides as follows:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Ohio Rev. Code § 2907.02(D); *State v. Williams*, 487 N.E.2d 560, 561 (Ohio 1986) (per curiam) (explaining that this provision "essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity").

Where a trial court limits a defendant's cross-examination in a manner that infringes upon the protections afforded by the Confrontation Clause, the court must balance the limitation against "the competing interests at stake." *Lewis v. Wilkinson*, 307 F.3d 413, 421 (6th Cir. 2002) (internal quotation marks omitted). These interests include the prevention of minitrials on collateral issues, including the victim's history, *see id.* at 422; *State v. Gardner*, 391 N.E.2d 337, 340 (Ohio 1979); the probative or material value of the evidence toward the issues at trial, *see Lewis*, 307 F.3d at 422; *Gardner*, 391 N.E.2d at 340-41; the prejudicial or inflammatory nature of the evidence sought to be introduced, *see Gardner*, 391 N.E.2d at 340-41; *State v. Whiteside*, No. 19482, 2003 WL 21360247, at *6 (Ohio Ct. App. June 13, 2003) (unpublished opinion); whether the trial court offered a cautionary instruction and/or limited the scope of cross-examination, *see Lewis*, 307 F.3d at 422, as well as the extent to which the defendant was able to cross-examine the witness, *United States v. Hynes*, 467 F.3d 951, 959-60 (6th Cir. 2006); *Boggs v. Collins*, 226 F.3d 728, 745 (6th Cir. 2000); and, possibly, which party invoked the law's protections, *see Gardner*, 391 N.E.2d at 341; *Williams*, 487 N.E.2d at 563.

### 2.      *Waiver of the rape-shield law's protections*

Jordan concedes that Ohio's rape-shield law generally prevents him from introducing evidence of C.A.'s sexual history. He instead argues that the State waived the protections of this law and opened the door to cross-examination of any witness

about C.A.'s sexual history through its questions about C.A.'s virginity. But Jordan has not proffered any authority supporting this argument and admitted at oral argument that he has no such authority.

The question before the Ohio Court of Appeals was whether the State's allegedly improper conduct at trial was sufficient to waive the rape-shield protections and permit the cross-examination of third-party witnesses about C.A.'s sexual history. Our task, however, is not to adjudicate whether the Ohio Court of Appeals reached the correct conclusion concerning Jordan's cross-examination of K.W., but instead to determine whether the state court's decision was contrary to or represented an unreasonable application of Supreme Court precedent. *See Lewis*, 307 F.3d at 420 (describing the court's function as deciding "whether [the exclusion of evidence by the trial judge] rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights").

The Ohio Court of Appeals in this case concluded—with little explanation—that "the doctrine of waiver does not apply to this situation" and instead applied the multi-factored balancing test described above in upholding the trial court's evidentiary ruling. *State v. Jordan*, No. 06 HA 586, 2007 WL 1880029, at *6-7 (Ohio Ct. App. June 22, 2007) (unpublished opinion). Jordan has not supplied us with any authority demonstrating that the state court's decision was improper. Because the Supreme Court has not explicitly addressed this issue and because of the broad latitude afforded to trial courts on evidentiary issues, we are not persuaded that the Ohio Court of Appeals' decision on Jordan's waiver argument was either contrary to or an unreasonable application of federal law.

### 3.     *Impeachment through the cross-examination of another witness*

In the context of cross-examination under a rape-shield law, the Supreme Court has

> distinguished between a "general attack" on the credibility of a witness—in which the cross-examiner "intends to afford the jury a basis to infer that the witness'[s] character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"—and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)); *see also Lewis*, 307 F.3d at 421 (determining that excerpts from the victim's diary were admissible because they tended to suggest a motive to lie).

Only the latter form of cross-examination—seeking evidence of bias or other motivations for the witness's testimony—is considered constitutionally protected because its importance outweighs any countervailing state interests. *Boggs*, 226 F.3d at 736. In this context, then, "a criminal defendant states a violation of the confrontation clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to *show a prototypical form of bias* on the part of the witness." *Id.* at 737 (quoting *Van Arsdall*, 475 U.S. at 680) (emphasis in original).

But the "[Supreme] Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination." *Id.* (quoting *Davis*, 415 U.S. at 321 (Stewart, J., concurring)). "No matter how central an accuser's credibility is to a case—indeed, her credibility will almost always be the cornerstone . . . —the Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct." *Id.* at 740 (ellipses added, emphasis in original) (rejecting on this ground the defendant's argument that the victim's credibility was crucial to his case and that any evidence bearing on credibility must be admitted). Several federal circuit courts, including our own, have therefore held that a defendant fails to state a

confrontation-clause violation where the testimony barred by the rape-shield law challenges only the witness's general credibility. *Id.* at 737-38 (discussing *Hughes v. Raines*, 641 F.2d 790 (9th Cir. 1991), and *United States v. Bartlett*, 856 F.2d 1071 (8th Cir. 1988), and citing several other cases without discussion).

With respect to a defendant's ability to present extrinsic evidence for impeachment, moreover, this court has noted that the Supreme Court has not recognized the sweep of the Confrontation Clause "to encompass the right to impeach an adverse witness by putting on a third-party witness." *Harrington v. Jackson*, 1 F. App'x 367, 370 (6th Cir. 2001). For this reason, the state court's decision in *Harrington* was found not to be contrary to Supreme Court precedent because this court "remain[ed] unconvinced that unearthing bias by extrinsic evidence is particularly significant or a fundamental element of the accused's defense, especially in light of the fact that Petitioner had sufficient opportunity to unearth bias on cross-examination." *Id.* at 372 (internal quotation marks omitted).

This court similarly determined in *Farley v. Lafler*, 193 F. App'x 543, 547 (6th Cir. 2006), that a defendant was not entitled under the Confrontation Clause "to seek to impeach the primary government witness through cross-examination of a different government witness, with what amounts to extrinsic evidence of the primary witness's credibility." *Id.* The *Farley* court concluded that the state court's exclusion of this evidence was not a violation of clearly established Supreme Court precedent because "neither the Supreme Court nor any federal court of appeals has ever held—or even suggested—that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose constitutional problems." *Id.* at 548 (internal quotation marks and brackets omitted). As in *Harrington*, the *Farley* court noted that the petitioner could have elicited the testimony he sought on cross-examination of the primary witness, but failed to capitalize on this opportunity. *Id.* at 547. Based on these cases, a defendant is generally unable to establish a confrontation-clause violation where he or she is denied the opportunity to present extrinsic evidence that would impeach another witness.

**4.      *Whether Jordan should have been able to impeach C.A. with K.W.'s testimony***

Jordan acknowledges that his counsel sought to impeach C.A. through K.W.'s cross-examination. He argues that the trial court erroneously applied the protections of the rape-shield law to preclude his counsel from doing so, yet declined to employ this statutory bar against the State's initial questions about C.A.'s virginity. But, as previously noted, the Ohio Court of Appeals denied any relief on the basis that C.A.'s sexual history was irrelevant to Jordan's defense that he and C.A. never actually engaged in sexual conduct. *See State v. Jordan*, No. 06 HA 586, 2007 WL 1880029, at *8 (Ohio Ct. App. June 22, 2007) (unpublished opinion).

In his appellate brief, the only explanation that Jordan provides to justify the proposed cross-examination of K.W. is that "[c]redibility is an issue in this case and the opening of this door leads to a particularized attack on credibility." But his argument that an attack on the victim's general credibility trumps Ohio's rape-shield law is the same one that was squarely rejected by this court in *Boggs*. *See* 226 F.3d at 737-40.

This court has further held that the Confrontation Clause does not guarantee a criminal defendant the right to impeach one witness through the cross-examination of another witness, regardless of whether the testimony would address credibility or bias. *See Farley*, 193 F. App'x at 547 (noting that the defendant cannot accomplish through a third party what he would be prohibited from doing during the victim's cross-examination). *Farley* and *Harrington* both indicate that the constitutional balancing test described above weighs in favor of exclusion, particularly where the defendant was afforded a sufficient opportunity to cross-examine the victim directly. *See Farley*, 193 F. App'x at 547; *Harrington*, 1 F. App'x at 370-71. Moreover, "our rules of evidence generally frown upon using evidence of past 'wrongs' or 'acts' to show 'the character of a person in order to show action in conformity therewith' on a later occasion." *Boggs*, 226 F.3d at 744 (quoting Fed. R. Evid. 404(b); Ohio R. Evid. 404(b)).

The State further argues that questions about the victim's lack of sexual history do not fall within the protections of the rape-shield law in any event. Although we

question the soundness of this argument, *see State v. Whiteside*, No. 19482, 2003 WL 21360247, at *5 (Ohio Ct. App. June 13, 2003) (unpublished opinion) (explaining that "an assertion that no sexual activity took place" may fall within the rape-shield law's protections), we have no need to address the proper scope of the statute. Instead, we conclude that the trial court did not err in applying the rape-shield law even if the State's questions about C.A.'s virginity should have been excluded. Jordan, after all, failed to object or alert the court to an error when the prosecutor questioned C.A., while the prosecutor did lodge an objection to defense counsel's questioning of K.W. That the trial court addressed only the issues brought to its attention does not suggest that the court imposed a double standard on the parties.

In sum, the Ohio Court of Appeals' decision that the trial court did not abuse its discretion in declining to allow the proposed cross-examination of K.W. is not contrary to or an unreasonable application of federal law. Jordan has therefore failed to establish a confrontation-clause claim arising out of the limitations placed on his counsel's cross-examination of K.W.

### 5.     *Harmless error and fundamental fairness*

Even if a confrontation-clause violation had occurred, we would not grant Jordan's habeas petition unless the state trial court's ruling was more than a harmless error. *See Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) ("This court's duty is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights." (internal quotation marks omitted)).

We review de novo the district court's determination that an error was harmless. *Calvert v. Wilson*, 288 F.3d 823, 832-33 (6th Cir. 2002). An error is not harmless if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

Jordan admits that the testimony about C.A.'s virginity was not relevant to the issues at trial, since his defense theory involved the wholesale denial of any sexual activity rather than a challenge to her lack of consent. A few brief questions about an admittedly collateral topic would not likely have a substantial influence on the jury's verdict. *See Jordan v. Hurley*, 397 F.3d 360, 364 (6th Cir. 2005) ("Jordan's inability to impeach the victim did not have a substantial and injurious effect or influence in determining the verdict"); *Whiteside*, 2003 WL 21360247, at *6 ("The fact that S.W. had no sexual relations with any other person was neither inflammatory nor prejudicial."). Jordan has not presented any argument to the contrary. Moreover, the State had not yet been informed of Jordan's defense theory at the time of C.A.'s direct examination and, according to its counsel's assertions at oral argument, still believed that Jordan might argue that C.A. consented to the sexual activity.

In sum, we find no basis to question the resolution of this case by the Ohio courts. The district court therefore did not err in denying Jordan's petition for a writ of habeas corpus.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.