RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0350P (6th Cir.)
File Name: 02a0350p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NATHANIEL M. LEWIS,
     _Petitioner-Appellant,_

    _v._

REGINALD A. WILKINSON,
Director; BETTY D.
MONTGOMERY, Attorney
General of State of Ohio,
    _Respondents-Appellees._

No. 00-3523

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 99-01681—Dan A. Polster, District Judge.

Argued: June 20, 2002

Decided and Filed: October 7, 2002

Before: BOGGS and BATCHELDER, Circuit Judges;
STEEH, District Judge.[*]

_____

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Kirk A. Migdal, Akron, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Cleveland, Ohio, for Appellees. **ON BRIEF:** Kirk A. Migdal, Akron, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

STEEH, District Judge. In this habeas corpus petition, Petitioner Nathaniel M. Lewis argues that the trial court's exclusion of certain evidence in his rape trial prevented him from conducting appropriate cross-examination, thus violating his Sixth Amendment right of confrontation. Because we find that the excluded evidence reasonably goes to the issue of the victim's consent, as well as her motive in pursuing charges against Lewis, Petitioner's constitutional right of confrontation has been violated. Therefore, the district court's denial of habeas relief is **REVERSED** in accordance with this court's opinion.

**I.**

Appellant Nathaniel M. Lewis was indicted on November 6, 1996 by a Summit County Grand Jury on the charge of Rape, a violation of Ohio Revised Code § 2907.02(A)(2). The case proceeded to jury trial before the Court of Common Pleas on June 2, 1997. The jury returned a guilty verdict on June 6, 1997. On July 16, 1997, Lewis was sentenced to the Ohio Department of Rehabilitation and Correction for a term of eight years and is presently serving

**V.**

Appellant was denied his Sixth Amendment right to confrontation when the trial court excluded several statements from the alleged victim's diary. The statements at issue, especially when read with the diary entry in its entirety, can reasonably be said to form a particularized attack on the witness's credibility directed toward revealing possible ulterior motives, as well as implying her consent. This court recognizes the difficulty a trial judge faces in making an evidentiary decision with the urgency that surrounds the wrapping up of pretrial loose ends prior to the start of jury selection. The trial court took the state's interests in protecting rape victims into account in excluding the statements, but did not adequately consider the defendant's constitutional right to confrontation. The jury should have been given the opportunity to hear the excluded diary statements and some cross examination, from which they could have inferred, if they chose, that the alleged victim consented to have sex with the appellant and/or that the alleged victim pursued charges against the appellant as a way of getting back at other men who previously took advantage of her. The trial court can reduce the prejudicial effect of such evidence by limiting the scope of cross-examination as to the victim's prior sexual activity and her reputation.

For the foregoing reasons, we **REVERSE** the district court's denial of habeas relief and **REMAND** with directions to issue a conditional writ of habeas corpus releasing Lewis from custody, unless he is retried within a reasonable period of time to be determined by the district court.

characterizes herself in her diary. To permit cross-examination on these statements could lead to a trial of the victim's sexual history with other men. However, the court could minimize any danger of undue prejudice by admitting the evidence with a cautionary instruction and strictly limiting the scope of cross-examination. The statements have substantial probative value as to both consent and the victim's motive in pressing charges against appellant. The constitutional violations in this case are significant enough to outweigh any violation of the rape shield law, whose purposes can be served by the instructions of the trial court.

Appellee argues that, assuming *arguendo* the trial court did err in not allowing defense counsel to use the particular excerpts at issue, such error was harmless. The test for harmless error, for purposes of determining habeas corpus relief, is whether the error made at trial "had a substantial and injurious effect or influence in determining the jury's verdict, rather than whether the error was harmless beyond a reasonable doubt." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

While the jury was exposed to other excerpts of Heaslet's diary, and the attorneys engaged in cross-examination as to those excerpts, the excluded excerpt "B" would not have been cumulative. The excluded diary excerpt went to a different type of motive than that implied by the other evidence, which went mostly to Heaslet's pecuniary interests. The excluded evidence was in fact the strongest evidence of Heaslet's motive to take a stand against all of the men who had wronged her, and at the same time to protect her reputation. More importantly, the excluded evidence permitted the jury the reasonable inference that Heaslet consented to have intercourse with Lewis. The trial court's decision to exclude excerpt "B" had a "substantial and injurious influence in determining the jury's verdict." As such, the evidentiary decision was not harmless error.

his sentence. Lewis filed a motion for new trial, which was denied by the trial court on July 16, 1997.

The Court of Appeals, Ninth Judicial District affirmed Lewis conviction on August 12, 1998. The parties argued in their briefs, and the Court of Appeals discussed in its opinion, the trial court's decision to exclude certain evidence in terms of the rape shield law. While the Sixth Amendment was mentioned in the heading entitled "First Assignment of Error", it was not specifically discussed by the parties or the court. Lewis appealed to the Ohio Supreme Court; his brief before that court explicitly addressed the constitutional right to confrontation. The Ohio Supreme Court denied leave to appeal and dismissed Lewis' appeal as not involving any substantial constitutional question. Although the Ohio Supreme Court's brief journal entry did not elaborate on the Sixth Amendment argument, the Court was clearly presented with the constitutional issue and may be presumed to have considered the merits of that issue. For purposes of seeking habeas corpus relief, the exhaustion requirement is satisfied if the federal issue has been presented to the highest state court. "It is settled law in this circuit that a constitutional claim which is presented to the state courts, regardless of whether they address and dispose of it, will satisfy the exhaustion requirement." *Rudolph v. Parke*, 856 F.2d 738, 739 (6th Cir. 1988) (citations omitted).

On July 14, 1999, Lewis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Ohio. Magistrate Judge George J. Limbert issued a Report and Recommendation on January 21, 2000, which recommended that the petition be denied. Lewis filed objections, and the district court adopted the Magistrate Judge's Report and Recommendation denying the habeas petition. The district court issued the following Certificate of Appealability: "[W]hether failure to admit specific portions of the victim's diary at trial effectively denied Lewis his Sixth Amendment [right] to confront a witness." This appeal followed.

## II.

Nathaniel Lewis and Christina Heaslet were friends who met during their first year at the University of Akron. Heaslet testified that Lewis was a joker and a flirt who was interested in her sexually. She responded to Lewis's advances by explaining she "wasn't that kind of person that started having sex with anybody that she just met." She testified she was physically attracted to Lewis, but he "tried to hook up with everybody" and was not interested in the kind of relationship that she was.

On the evening of October 12, 1996, at 8:45 p.m., Heaslet called Lewis and invited him to her dormitory room. Lewis arrived at approximately 8:50 p.m. They made plans earlier in the day for him to come to her room to borrow some music compact discs. Heaslet and Lewis watched television, listened to music, and talked with Keryn Mayback, while Heaslet drank wine coolers. Ms. Mayback left at approximately 9:30 or 9:45, and Heaslet and Lewis were alone in Heaslet's room. Shortly after Mayback left, while Heaslet and Lewis were listening to music, Lewis got up and turned off the light. According to Heaslet's testimony, Lewis grabbed her, threw her on the bed, and took off all her clothes. Lewis then completely disrobed, stood up, pulled out a condom, and placed it on his penis. Heaslet testified she was repeatedly pushed down by Lewis, and her legs were forced apart, while she continued to cry "don't do this." Lewis then penetrated her.

Lewis's testimony was that after he turned the lights off he told Heaslet to come and find him. Heaslet found him on the bed, and he put his hand up her shirt. Heaslet removed her bra, and they started kissing. Together they removed Heaslet's sweatshirt, and then Lewis disrobed and put on a condom. Meanwhile, Heaslet took off the rest of her clothes. According to Lewis, Heaslet did not say anything during the time they had intercourse.

Lewis then turned on the lights, wrapped the condom in a tissue and threw it in the trash. Heaslet picked up the condom

the statements excluded from evidence: to show that Ms. Heaslet may have fabricated the charge against Mr. Lewis and consented to sexual relations." However, the evidence referred to by the Magistrate Judge went to Ms. Heaslet's feelings of guilt over pressing charges; and about her financial difficulties at the time of the incident and her subsequent diary entry that she was suing Mr. Lewis civilly as a way of getting out of debt. Appellant argues that the excluded portion was not cumulative, because it contained Heaslet's own words and was more direct on the issue of motive and consent than the admitted portion of the April 20 entry. When the excluded portion is read together with the rest of the diary entry, the fact finder could reasonably infer an admission of consent and an improper motive. The court agrees with appellant that, without the excluded statements, the jury did not have adequate information to assess the defense theories of consent and improper motive.

A finding that the Confrontation Clause is implicated requires the court to weigh such violation against the competing interests at stake - in this case the protections offered by Ohio's rape shield law. The state interests advanced by the rape shield law have been identified by the Ohio Supreme Court as follows:

> First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process.

*State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979) (citations omitted).

The excluded statements unquestionably go to the alleged victim's reputation for "giving in" to men, for not being "strong enough to say no" and for "being a whore," as she

be construed as evidence that Heaslet consented to have intercourse with Lewis. The trial court concluded that the references to "them" in the excluded statements, as opposed to the specific references to "Nate" used previously in the same diary entry, render the later statements generic, misleading, and ambiguous. However, this court believes the statements can reasonably be taken to infer consent and motive, and should have been given to the jury to make the ultimate determination.

The decisions in *Davis* and *Boggs* dictate that the issue of a witness's motivation in testifying carries with it the constitutionally protected right of cross-examination. This court disagrees with the district court's characterization of the excluded diary entries as going solely to general credibility of the witness. When a trial court has limited cross-examination from which a jury could have assessed a witness's motive to testify, a court must take two additional steps:

> First, a reviewing court must assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of . . . improper motive. Second, if this is not the case, and there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake.

*Boggs*, 226 F.3d at 739 (citations omitted).

Turning to the first inquiry, the court must determine whether the jury had enough information to assess the defense theory of improper motive. The Ohio Court of Appeals held "[i]n the instant case, defense counsel conducted a thorough examination of Ms. Heaslet regarding her prior statements. The probative value of introducing the actual written statements was substantially outweighed due to its cumulative nature." The Magistrate Judge also looked at the cross-examination of Heaslet and determined that it "served the same purpose that Mr. Lewis sought to be accomplished by

wrapper, threw it in the trash, and told Lewis he had to leave. Heaslet left the room with Lewis. Lewis stopped a couple of doors down the hall to write a note on another girl's door. Heaslet rode down the elevator with Lewis and signed him out at the front desk.

Heaslet then went to see Alison Legitt, the Resident Coordinator for the dormitory, who called the police. Heaslet did not want to speak to the police initially. She was taken to the hospital, but did not want to see a rape counselor, and for the first several hours did not wish to file any charges. Heaslet eventually agreed to see a counselor on October 14, and was encouraged by her counselor to keep a diary. Lewis was arrested in his dormitory room in the early hours of October 13. He waived his *Miranda* rights and gave a statement explaining that he and Heaslet had consensual sex.

Several weeks prior to the scheduled trial date, Lewis received in the mail an envelope that had been sent anonymously to his home address. The envelope contained xeroxed excerpts of Heaslet's diary. Lewis gave the envelope to his trial counsel, who disclosed the contents to the assistant prosecutor and the trial judge. Lewis's counsel requested the production of the entire diary. The State acquired Heaslet's complete diary and provided it to the court for *in camera* review. The State moved the court *in limine* to exclude reference to the diary except for certain limited portions. The court marked the entire diary as Exhibit "E". The portions anonymously sent to Lewis were marked Exhibits "A", "B", "C" and "D". Defense counsel argued for permission to cross-examine Heaslet on excerpts "A", "B", "C" and "D", arguing they were relevant to Heaslet's veracity and motive to lie and spoke directly to the issue of consent. Defense counsel was particularly interested in excerpt "B" contained in the entry dated April 20, 1997:

> I can't believe the trial's only a week away. I feel guilty (sort of) for trying to get Nate locked up, but his lack of respect for women is terrible. I remember how disrespectful he always was to all of us girls in the

courtyard . . . he thinks females are a bunch of sex objects! And he's such a player! He was trying to get with Holly and me, and all the while he had a girlfriend. I think I pounced on Nate because he was the last straw. That, and because I've always seemed to need some drama in my life. Otherwise I get bored. That definitely needs to change. I'm sick of men taking advantage of me . . . and I'm sick of myself for giving in to them. I'm not a nympho like all those guys think. I'm just not strong enough to say no to them. I'm tired of being a whore. This is where it ends.

Citing the rape shield law, Ohio Revised Code § 2907.02(D), the trial court prohibited the defense from introducing the following language from Exhibit "B":

. . . and I'm sick of myself for giving in to them. I'm not a nympho like all those guys think. I'm just not strong enough to say no to them. I'm tired of being a whore. This is where it ends.

The defense had argued that this provision, when read in context, was vital because it stated, or at least implied, that Heaslet had not said "no" to Lewis, and it could be construed as an admission that she had consented to intercourse with Lewis. It also provided an apparent motive as to why she would falsely claim she was raped – she was upset with herself for giving in to men. The State had argued that the language at issue constituted opinion and reputation evidence of the victim's past sexual activity and was therefore protected under the rape shield law. The trial court agreed with the State, holding that any probative value of the evidence was outweighed by its prejudicial effect.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") set forth new standards for reviewing a federal habeas corpus petition. The Supreme Court described the new standards, which strengthen the presumption of correctness given to state court determinations:

construed as admissible somehow, it would be misleading to the jury and unduly prejudicial and inflammatory, would outweigh any possible probative value in this case, in particular, the court notes that where the victim meant to describe the defendant Nate, she did use his name in particular, the generic references to them are too misleading, too ambiguous in this case to generate a true probative issue as far as the court is concerned.

This court's duty "is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982). On motion for reconsideration[1], the district court concluded that the excluded diary excerpts went to the victim's general credibility, and were therefore properly excluded pursuant to *Williams* and *Boggs*.

In this court's view, the excluded excerpts are evidence of consent and motive, as argued by appellant. For example, the excluded statements: "I'm just not strong enough to say no to them" and "this is where it ends", when read together with the admitted statements: "I'm sick of men taking advantage of me" and "I think I pounced on Nate because he was the last straw," could reasonably be read as Heaslet pursuing rape charges against Lewis as a way of taking a stand against all the men who previously took advantage of her. The excluded statement: "I'm just not strong enough to say no to them" may

---

[1]The district court granted reconsideration because in its order adopting the Magistrate Judge's recommendation it applied a burden of proof which was subsequently rejected by the Supreme Court. The court had held that petitioner did not meet the burden of proving that the trial court's decision was so unreasonable as to not be debatable among reasonable jurists. *Tucker v. Prelesnik*, 181 F.3d 747, 753 (6th Cir. 1999). After the district court decision was rendered, the Supreme Court issued *Williams v. Taylor*, *supra*, which provides the current standard of review to be used in reviewing a petition for writ of habeas corpus.

and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Specifically, petitioner takes issue with the trial court's exclusion of the portion of Exhibit "B" which reads:

> . . . and I'm sick of myself for giving in to them. I'm not a nympho like all those guys think. I'm just not strong enough to say no to them. I'm tired of being a whore. This is where it ends.

Appellant argues that the trial court's ruling to exclude a portion of the victim's diary goes against the Supreme Court's clearly established precedent that cross-examination regarding motive is constitutionally protected. In support, appellant cites to *Olden v. Kentucky*, 488 U.S. 277, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), wherein defendant Olden was charged with the rape and kidnap of the victim. Olden's defense was consent, and he sought to confront the victim with evidence of her cohabitation with another man. Olden's theory was that the victim had concocted a story to protect her relationship with the other man. The trial court excluded this evidence because while the victim was white, her boyfriend was black and so was Olden, and the court believed this fact would have created prejudice against the victim. The Supreme Court concluded that the prejudicial effect of any testimony could not "justify the exclusion of cross-examination with such strong potential to demonstrate the falsity of [the victim's] testimony." *Id*. at 232.

In this case, the trial court stated its reason for excluding the portion of the diary as follows:

> The court finds that the evidence at issue does not fall within the exceptions to the rape shield law set forth in 2907, subsection D, that the introduction of that evidence will directly elicit information about the opinion of this victim's sexual activity, all of which is excluded under the rape shield statute; that even if this were to be

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With regard to the first prong of § 2254(d)(1), the state court decision will be "contrary to" established Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in our cases", or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id*. at 405-06.

On the question of unreasonableness, the Supreme Court held that under § 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

Regarding the state court determinations of questions of fact, § 2254(e)(1) provides for a presumption of correctness which is rebuttable only by clear and convincing evidence:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## IV.

The Sixth Amendment guarantees a defendant the right to be confronted with the witnesses against him. U.S. Const. amend. VI. The right to confrontation includes the right to conduct reasonable cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Id*. at 316. The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Id*. at 316-17. In this vein, the Supreme Court has "distinguished between a 'general attack' on the credibility of a witness – in which the cross-examiner 'intends to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony' – and a more particular attack on credibility 'directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand.'" *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (citing *Davis*, *supra* at 316).

The *Boggs* case involved the trial court's exclusion of evidence in a rape trial of an alleged prior false accusation of rape. The defense sought to introduce such evidence so that the jury could infer that if the victim lied or fabricated once, she would do so again. *Id*. at 739. The court found this to be an attack on the witness's general credibility. "Under *Davis*

and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser." *Id*. at 740. The court was unable to find a plausible theory of motive or bias for allowing such evidence to be presented, and concluded that Boggs did not demonstrate a Confrontation Clause infraction. *Id*.

The trial court has discretion to impose limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *Id*. at 736. The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*.

Petitioner's prayer for relief concerns the evidentiary rulings made by the trial court under Ohio Revised Code Section 2907.02(D), Ohio's rape shield law. That section provides:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code,