DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State, appeals from the judgment of the Summit County Court of Common Pleas finding that Appellee, Nathaniel Lewis, had been wrongfully imprisoned. We affirm.
 I. {¶ 2} Appellee was tried and convicted of the crime of rape as a result of an incident which occurred on the campus of the University of Akron on October 12, 1996. This Court subsequently affirmed that conviction. State v. Lewis (Aug. 12, 1998), 9th Dist. No. 18666. Thereafter, Appellee exhausted his state appeals and sought relief in federal court. After approximately five years in prison, Appellee's writ of habeas corpus was granted by the Sixth Circuit and his case was remanded for a new trial. See Lewis v. Wilkinson (C.A.6 2002),307 F.3d 413. The Sixth Circuit found that Appellee's Sixth Amendment right of confrontation had been violated by the trial court's exclusion of portions of the victim's diary. Id. at 415.
 {¶ 3} In January of 2003, Appellee filed a civil suit against Appellant pursuant to R.C. 2743.48 seeking a declaration that he was wrongfully imprisoned. Through a stipulation reached by the parties, the trial court only heard live testimony from Appellee and the alleged victim, C.H. For all other witnesses, the trial court reviewed the transcript of their testimony from Appellee's criminal trial. Further, all of the physical evidence from Appellee's criminal trial was before the trial court, including the entire diary of the alleged victim.
 {¶ 4} Following trial, the lower court found that Appellee had proven by a preponderance of the evidence that he was wrongfully imprisoned. Appellant timely appealed that finding, raising two assignments of error for our review. As both assignments of error present the same issue, we will address them together.
 II. ASSIGNMENT OF ERROR I
"The trial court's decision, which declared [appellee] a wrongfully-imprisoned individual pursuant to R.C. § 2743.48, is against the manifest weight of the evidence."
 ASSIGNMENT OF ERROR II
"The trial court abused its discretion by deciding that [appellee] proved by a preponderance of the evidence that he is a wrongfully-imprisoned individual pursuant to R.C. § 2743.48."
 {¶ 5} In its assignments of error, Appellant contends that the trial court erred in finding that Appellee was wrongfully imprisoned. Specifically, Appellant argues that the trial court misinterpreted the evidence before it and failed to recognize the inconsistencies in Appellee's testimony. We find that Appellant's assignments of error lack merit.
 {¶ 6} When an appellant asserts that a civil judgment is against the manifest weight of the evidence, this Court's standard of review is the same as that in a criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286. In determining whether a judgment is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of one of the parties. Id.
 {¶ 7} As such, every reasonable presumption must be made in favor of the judgment and the findings of fact of the trial court. Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, a judgment is not against the manifest weight of the evidence simply because conflicting evidence exists before the trier of fact. State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14. "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Karches, 38 Ohio St.3d at 19. This is so because evaluating evidence and assessing credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 8} We begin by noting that Appellant has requested that the above standard be relaxed because the trial court did not have the opportunity to observe many of the witnesses in the current matter. This Court is not persuaded to alter our standard of review. First, Appellant stipulated to introducing the testimony of a majority of the witnesses through the transcripts of Appellee's criminal trial. Further, the two critical witnesses in this matter, Appellee and C.H., both gave live testimony in this matter. As such, the trial court was still in the best position to judge the credibility of the witnesses.[1]
 {¶ 9} R.C. 2743.48(A) provides that an individual must prove five distinct factors to be found wrongfully imprisoned. In the instant matter, the parties stipulated that Appellee met R.C. 2743.48(1)-(4). Thus, Appellee's civil trial was limited to the application of R.C.2743.48(A)(5) which provided, at the time of the filing of Appellee's complaint on January 24, 2003, as follows:
"Subsequent to his sentencing and during or subsequent to his imprisonment, it was determined by a court of common pleas that the offense of which he was found guilty, including all lesserincluded offenses, either was not committed by him or was not committed by any person."
 {¶ 10} Appellee's conviction was the result of an alleged incident which occurred in C.H.'s dorm room on the campus of the University of Akron. In the instant matter, nearly all of the testimony and evidence provided by Appellant was contradicted by the testimony and evidence provided by Appellee. A review of this evidence, in light of the highly deferential standard of review established by legal precedent, compels this Court to conclude that the trial court did not lose its way in finding that Appellee was wrongfully imprisoned.
 {¶ 11} C.H. testified as follows. She and Appellee were friends who occasionally hung out with one another. Appellee had previously asked her for sex in a direct manner and she had turned him down. On the evening of October, 12, 1996, she had allowed Appellee to come to her dorm room to borrow some CDs. While the two of them were in the room alone, Appellee turned out the lights in her room, then forcibly removed her clothing. He then removed his own clothing, put on a condom, and forcibly raped her while holding her arms down. During the encounter, she repeatedly told Appellant that she did not want to have sex with him.
 {¶ 12} Numerous other witnesses were presented by the State. They testified that C.H. related to them a substantially similar account of the event. Her roommate and resident director both testified that C.H. spoke with them almost immediately following the incident and cried while recounting what had been done to her. In addition, C.H. informed the University of Akron police that she had been raped and gave them the same information.
 {¶ 13} In addition, the State presented medical testimony in an attempt to prove that C.H. had been forcibly raped. The State's witness, Dr. Michael Beeson, testified that C.H. had a linear abrasion on her cervix. He went on to note that such an injury could only result from significant force being exerted on the uterus, and that in his opinion, the injury could not have resulted from consensual sex.
 {¶ 14} The evidence presented by the State, however, was all disputed by Appellee. Appellee testified on his own behalf as follows. He had, at an earlier time, asked C.H. through the use of slang whether she would have sex with him, and she had responded that she would. He went to her dorm that night with the intent of having consensual sex with C.H. While in her dorm room, C.H. called her roommate to see if she was coming home anytime soon. Additionally, C.H. took a birth control pill in Appellee's presence. Appellee testified that the two then had consensual sex, and he prepared to leave immediately thereafter. He stated that C.H. never appeared upset during the time they had sex or while she escorted him out of the dorm.
 {¶ 15} Appellee's testimony was supported by others in several key positions as well. The resident advisor working the sign out desk in C.H.'s dorm testified that C.H. did not seem upset or appear to have been crying when she signed Appellee out immediately after the incident. Additionally, a college friend of Appellee's testified that he overheard the conversation in which C.H. agreed to have sex with Appellee. Finally, Appellee's medical expert testified that the injury to C.H.'s cervix was nonspecific. That is, that no medical professional could determine whether or not C.H.'s injury was caused by vigorous consensual sex or forcible rape.
 {¶ 16} Finally, the trial court was presented with C.H.'s diary in its entirety. C.H. began to keep the diary at the request of her counselor. Prior to Appellee's criminal trial, an unknown person faxed him several pages of the diary, informing him whose diary it was. The following are several excerpts from the diary.
"I can't wait to go to Charlotte . . . I want to start all over. I refuse to make the same mistakes that I've made in Akron. For one thing, I'll be honest." (Emphasis in original).
"I can't believe the trial's only a week away. I feel guilty (sort of) for trying to get Nate locked up, but his lack of respect for women is terrible. I remember how disrespectful he always was to all of us girls in the courtyard . . . he thinks females are a bunch of sex objects! And he's such a player! He was trying to get with Holly + me and all the while he had a girlfriend. I think I pounced on Nate because he was the last straw. That, and because I've always seemed to need some drama in my life. Otherwise I get bored. That definitely needs to change. I'm sick of men taking advantage of me . . . and I'm sick of myself for giving in to them. I'm not a nympho like all those guys think. I'm just not strong enough to say no to them. I'm tired of being a whore. This is where it ends."
"Yesterday morning I went to see two lawyers (partners) about a civil suit against Nate. * * * I know that suing him is wrong, but what else is there for me to do? I know I'm not an evil person normally, but Nate pissed me off, and took advantage of me. Sorry for him that I'm so revengeful. I'll probably feel guilty about this someday."
"Speaking of money, I'm suing Nate. I'm desperate for money! My consience (sic) wouldn't allow me to do that before, but I'm going to do whatever I have to to get out of debt."
These provisions all cast doubt upon the credibility of C.H. Even though C.H. explained her reasons for writing the above entries, the trial court viewed the explanations in lights of the totality of the evidence. The trial court as well as this Court (unlike the jury in the criminal case) had the opportunity to review the diary in its entirety.
 {¶ 17} The trial court was presented with the question as to which witness was more credible. C.H. claimed that she was forcibly raped, while Appellee claimed that the sex was consensual. The medical evidence was conflicting and inconclusive. The diary before the trial court provided entries from which the trial court could conclude that C.H.'s claim was financially motivated. Each of the critical witnesses gave inconsistent statements on the witness stand. It was, however, the trial court who had the opportunity to observe the demeanor of each of the witnesses and to make the appropriate credibility determinations. Reversal under a manifest weight challenge is warranted only in extraordinary circumstances when the evidence presented weighs heavily in favor of one of the parties. Otten, 33 Ohio App.3d at 340. In light of the record before us, the Appellant has not discharged that burden, and we cannot conclude that the trial court lost its way or abused its discretion in finding Appellee to be a wrongfully imprisoned individual. Appellant's assignments of error are overruled.
 III. {¶ 18} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Baird, J., concurs.
[1] The dissent suggests that this case was retried by the lower court and by the majority on appeal. The record does not bear out this contention. At the trial below, the burden was clearly on Appellee to prove his wrongful imprisonment by a preponderance of the evidence. The standard was acknowledged by the trial court which found Appellee to have discharged his burden. Our review does not contemplate retrial of the case, but rather consideration of the matter on the assignment of error brought by Appellant that the judgment below is against the manifest weight of the evidence.