**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0166n.06

No. 09-2154

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 22, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DUSTIN WIECEK, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BLAINE LAFLER, WARDEN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Before:  SILER, CLAY,  and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Petitioner-appellee Dustin Wiecek filed a petition for a writ of *habeas corpus* in the district court pursuant to 28 U.S.C. § 2254 following his state court conviction for first-degree criminal sexual conduct.  The district court granted the petition based upon Wiecek's claim that the state court violated his Sixth Amendment Confrontation Clause rights by excluding a journal entry written by the victim, which Wiecek sought to use during her cross-examination.  Warden Blaine Lafler appeals.  Because the state court's exclusion of the victim's poem did not abridge Wiecek's Confrontation Clause rights, we reverse the district court's decision granting *habeas* relief.

No. 09-2154
*Wiecek v. Lafler*

I.

Following a sexual encounter with victim, D.R., on June 18, 1999, Wiecek was charged in state court with wilfully mingling gamma-Hydroxybutyric acid (GHB) with a drink he knew might be ingested, first-degree criminal sexual conduct during the commission of a felony or poisoning, and first degree criminal sexual conduct while he knew or should have known that D.R. was physically helpless.  Before trial, Wiecek's defense counsel filed a motion *in limine* seeking to admit a handwritten poem by D.R., contained in a journal she left at his home after the sexual encounter. The poem read:

I woke up confused
I woke up drunk
I woke up and hit my head
on my nightstand
Wait a second
that's not my nightstand
Where the hell am I?
And who's that sleeping
next to me?
I better run
I better hide
'cause I don't know
What I did last night
. . .
I woke up confused
I didn't know where I was
except that I had
gone to an apartment complex
Too bad I woke up
in a car

With somebody else's
clothes on and no bra
I didn't think this
would happen again
Drinking is just for
those who have nothing else
to do

I guess I did plenty
and now I [k]now whom
Knocking at the window
told me I wasn't allowed
to be here anymore
So I went inside
and ended up naked again
At least it was
a familiar face this time
At least I know his last name
I guess that makes it okay
to do it again[.]

The trial court denied admission of the poem under Michigan Rule of Evidence (MRE) 404(a) as improper character evidence and found that it did not satisfy the exceptions set forth in MRE 404(a)(3).[1] Evidence of D.R.'s prior experiences with drinking or sexual conduct with other men was therefore inadmissible to show her conduct in conformity on the occasion.

D.R. testified at trial about the June 18 sexual encounter. She and Wiecek were high school students who became friends through their work at a local restaurant. Although Wiecek was romantically interested in her, D.R. had made clear on several occasions that she did not wish to have sexual intercourse with him. On June 18, D.R. visited Wiecek's home for the purposes of using his hot tub and drinking; they shared a half-filled bottle of rum and drank several beers apiece, at which point D.R. felt slightly intoxicated. Wiecek then brought her a glass of wine. D.R. stated that, after drinking the wine, she "felt . . . very out of it," began acting in a sexual manner, and removed her bathing suit bottom, allowing the hot tub jet to strike her vaginal area. She next remembered awakening on Wiecek's bed. At that point, Wiecek stated that he had lost his virginity to her. Although she did not feel intoxicated—and had previously consumed an equivalent amount of alcohol in a hot tub without passing out—D.R. did not recall having sex and testified that she would not have consented to doing so. That evening, D.R. experienced vaginal pain and noticed bruising on her arms, legs, and back. She also received a phone call from Wiecek, who explained that they had made a mistake and inquired as to whether D.R. thought she had been raped. On June 19, D.R.

---

[1]MRE 404(a)(3) provides: "Evidence of a person's character . . . is not admissible for the purpose of proving action in conformity therewith . . . except: (3) In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy or disease."

sought treatment at a nearby hospital where she also spoke with police officers about her sexual encounter with Wiecek.

The defense argued that D.R. was neither unconscious nor physically helpless on June 18 but rather had suffered an alcoholic blackout that clouded her memory. The jury heard testimony from defense expert witness, Dr. Bernard Eisenga, who stated that individuals experiencing an alcoholic blackout "may appear to be awake and coherent but, in reality, they are not. . . . They basically have an amnesic period of time where they don't remember what's going on." The defense also cross-examined D.R. extensively with respect to her sexual behavior in the hot tub and her history of alcohol consumption, eliciting testimony that she drank regularly and had experienced alcoholic blackouts after the date of the sexual encounter with Wiecek. Remarking that D.R. filed charges only after learning she had tested positive for GHB, the defense argued that she "seized on the belief she was poisoned" as an excuse for her behavior.

Following the jury trial, Wiecek was convicted of first-degree criminal sexual conduct, acquitted of the remaining charges, and sentenced to twenty-seven months to fifteen years of imprisonment. *People v. Wiecek*, No. 247596, 2005 WL 292193, at *1 (Mich. Ct. App. Feb. 8, 2005) (per curiam) (unpublished). He appealed his conviction as of right, arguing that the trial court violated his Sixth Amendment Confrontation Clause rights by excluding D.R.'s journal. However, the Michigan Court of Appeals affirmed the trial court, holding the journal inadmissible under MRE 404 and under Michigan's rape shield law[2] because the poem did not concern D.R.'s past sexual

_____

[2]Michigan's rape-shield law is codified at Michigan Compiled Laws 705.520j(1), which provides:

conduct with Wiecek and was not offered to show the source or origin of semen, pregnancy or

disease. *Id.* at \*5–6. While acknowledging that the Confrontation Clause sometimes mandates the

admission of otherwise-barred evidence, the court noted that "'absent extraordinary circumstances,

a [victim's] . . . past sexual conduct with third persons is ordinarily irrelevant and inadmissible to

show consent.'" *Id.* at \*6 (quoting *People v. Hackett*, 365 N.W.2d 120, 128 (Mich. 1984)). The

court resolved that Wiecek failed to make the requisite showing of relevancy and that the poem,

which did not necessarily reflect an autobiographical event, evidenced neither a motive to falsely

accuse Wiecek nor consent to his sexual advances. Thus, the court concluded that "the exclusion

of the journal excerpts neither abridged [his] right of confrontation, nor constituted an abuse of

discretion by the trial court." *Id.* Thereafter, the Supreme Court of Michigan denied Wiecek's

application for leave to appeal the decision of the Michigan Court of Appeals. *People v. Wiecek*, 707

N.W.2d 207 (Mich. 2005) (table).

After exhausting his state court remedies, Wiecek filed a petition for a writ of *habeas corpus*

in federal district court, arguing that the poem's exclusion violated his Confrontation Clause rights.

A magistrate judge issued a detailed report and recommendation denying the petition on the grounds

---

"Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value: (a) Evidence of the victim's past sexual conduct with the actor[,] [and] (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."
Mich. Comp. Laws Ann. § 750.520(j) (West 2004).

that the poem implied neither consent nor motive to falsely accuse Wiecek. In particular, the magistrate judge observed that "[t]he poem is equally indicative of a prior sexual assault based on [D.R.'s] physical incapacitation as it is of consensual sex" and, in any event, did not pertain to a sexual encounter with Wiecek. *Wiecek v. Lafler*, No. 2:06-CV-12233, 2009 WL 2616441, at *12 (E.D. Mich. Jan. 14, 2009). Moreover, the report stated that "nothing in the poem . . . suggests any motive . . . to 'run' from her alcohol problem by falsely accusing [Wiecek]." *Id.*

Wiecek filed objections to the magistrate judge's report, which the district court sustained, concluding that the poem supported Wiecek's defense theories of consent, motive, and D.R.'s inability to accurately recall the circumstances of the June 18 sexual encounter. *Wiecek v. Lafler*, 693 F. Supp. 2d 723, 729 (E.D. Mich. 2009). Specifically, the district court determined that the statements, "I better run/ I better hide/ 'cause I don't know/ What I did last night," were evidence of D.R.'s shame regarding her past alcohol consumption and sexual behavior, which supported Wiecek's theory of her motive to falsely accuse him. *Id.* at 731 (noting that the excluded poem "showed that [D.R.] had a motive to accuse [Wiecek] of sexually assaulting her because of her shame over her actions of getting intoxicated and engaging in sex with [him]"). The district court further concluded the statements, "I woke up confused/ I woke up drunk/ with somebody else's clothes on and no bra," would have bolstered Wiecek's defense that D.R. "had consensual sex with him while in an alcoholic blackout." *Id.* at 730. The district court thus granted Wiecek a conditional writ of *habeas corpus* based upon a Confrontation Clause violation.

II.

Because Wiecek filed his *habeas* petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), we review *de novo* the district court's conclusions on issues of law and on mixed questions of law and fact, and we review its factual findings for clear error. *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004.) Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state court unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly-established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d); *Irick v. Bell*, 565 F.3d 315, 319–20 (6th Cir. 2009). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the unreasonable application clause, a federal habeas court may grant the writ if the state court's application of clearly established federal law to the facts of the prisoner's case was objectively unreasonable. *Id.* at 409–11.

As to the determination of unreasonableness, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007). In analyzing whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, we may consider only the holdings of the Supreme Court's decisions at the time the relevant state court rendered its decision. *See Lockyer v. Andrade*,

538 U.S. 63, 71–72 (2003); *Williams*, 529 U.S. at 412. Yet, this court's decisions "may be informative to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

### III.

The State contends that the Michigan Court of Appeals did not unreasonably apply clearly established federal law by upholding the trial court's exclusion of D.R.'s journal, as the poem did not advance Wiecek's defense theories of consent or improper motive. Moreover, the State maintains that Wiecek presented his defense theory—that D.R. engaged in consensual sex with him but could not recall the event due to an alcoholic blackout—through expert testimony and through D.R.'s admissions on cross-examination that she had been sexually aroused while in the hot tub, had significant experience with drinking, and had suffered subsequent alcoholic blackouts. Wiecek, however, contends that D.R.'s journal was substantially probative of his defense theory, as it demonstrated that she had experienced prior alcoholic blackouts and reinforced his argument that D.R.'s accusation was motivated by guilt stemming from "her unseemly behavior on the night in question."

The Sixth Amendment guarantees the right of a criminal defendant in a state or federal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407 (1965). Cross-examination is a "primary interest" secured by the Confrontation Clause; indeed, it "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (internal

quotations omitted). However, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

The Supreme Court has recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316–17. Thus, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witnesses.'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318). Yet, the Supreme Court has likewise stated that a criminal defendant's confrontation rights are not limitless; rather "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Id.* at 679; *see also Michigan v. Lucas*, 500 U.S. 145, 149 (1991). Therefore, "[g]enerally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

We have stated that, as here, when "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *Boggs v. Collins*, 226 F.3d 728, 743 (6th Cir. 2000) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167

(6th Cir. 1989)) (internal quotation marks omitted). Thus, when the trial court limits the extent of cross-examination, our inquiry is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (quoting *Dorsey*, 872 F.2d at 167) (internal quotation marks omitted). If, however, the jury did not have adequate information, such that "there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake." *Boggs*, 226 F.3d at 739 (citation omitted).

In this case, because the trial court permitted defense counsel to cross-examine D.R., we must determine whether the jury had adequate information to assess the defense theories of consent and improper motive and to evaluate D.R.'s credibility, despite the exclusion of D.R.'s journal. We conclude that it did and that Wiecek has therefore failed to state a Confrontation Clause violation. As to consent, the jury heard witness testimony during both direct- and cross-examination, which supported Wiecek's theory that D.R. appeared lucid and consented to sex while experiencing an alcoholic blackout. On direct-examination, D.R. acknowledged that she had consumed rum, several beers, and some wine while in the hot tub with Wiecek, and that she felt slightly intoxicated. She further admitted to "acting in a way that . . . could only be described as sexual," such that she removed her bathing suit bottom and allowed "the hot tub jet . . . [to] strike [her] vaginal area." During cross-examination, Wiecek elicited testimony that D.R. drank regularly as a teenager and had experienced alcoholic blackouts subsequent to the sexual assault on June 18, 1999. Dr. Eisenga also testified as an expert witness for the defense, explaining that individuals experiencing alcoholic

blackouts "may appear to be functioning normally" to those around them, a point that defense counsel reiterated during closing arguments.

Furthermore, during both D.R.'s cross-examination and closing arguments, defense counsel repeatedly highlighted the close friendship between D.R. and Wiecek in order to suggest that they were romantically involved. Specifically, defense counsel argued that D.R. "wants us to believe she can begin a friendship . . . with someone in June of 1998, continue seeing that person, not date anybody else . . . and not call it a relationship." Defense counsel stated to the jury, "you go that amount of time, you're that age and you're going to try to convince me that you . . . didn't kiss and . . . hug and . . . have your little play, whatever you do at that age. I'm not going to believe it." Based upon these arguments and the foregoing witness testimony, we conclude that the jury was well-apprised of the defense theory of consent.

The jury was likewise informed of the defense theory of improper motive—namely, that D.R. "grasped [GHB poisoning] as her excuse for her behavior rather than having to deal with the fact she has a drinking problem." *Wiecek*, 2005 WL 292193, at *6 (internal quotations omitted). During cross-examination, Wiecek's defense counsel highlighted the fact that D.R. had not decided to pursue prosecution of the case until the end of July 1999, a month after the alleged assault. Defense counsel also questioned D.R. regarding her testimony on direct-examination that she felt euphoric while drinking wine in the hot tub. On this point, counsel elicited testimony that D.R. had not described a sensation of euphoria in her earlier statements to detectives, had been educated as to the effects of GHB before trial, and had learned that it can induce a state of euphoria. That defense

counsel effectively disputed the charge of GHB poisoning is abundantly clear; indeed, Wiecek was acquitted of both charges involving the drug.

To support his argument that the exclusion of D.R.'s journal violated his Confrontation Clause rights, Wiecek directs our attention to *Lewis v. Wilkinson*, 307 F.3d 413 (6th Cir. 2002), in which we granted a petitioner's *habeas* application based upon a Confrontation Clause violation. As here, *Lewis* involved a rape prosecution in which certain statements from the victim's journal were barred under the state's rape-shield law. The relevant journal excerpt read:

> I can't believe the trial's only a week away. I feel guilty (sort of) for trying to get [the petitioner] locked up, but his lack of respect for women is terrible. . . . He was trying to get with Holly and me, and all the while he had a girlfriend. I think I pounced on [the petitioner] because he was the last straw. That, and because I've always seemed to need some drama in my life. Otherwise, I get bored. That definitely needs to change. I'm sick of men taking advantage of me . . . and I'm sick of myself for giving in to them. I'm not a nympho like all those guys think. I'm just not strong enough to say no to them. I'm tired of being a whore. This is where it ends.

*Id.* at 417. In particular, the trial court excluded the following language: "[A]nd I'm sick of myself for giving in to them. I'm not a nympho like all those guys think. I'm just not strong enough to say no to them. I'm tired of being a whore. This is where it ends." *Id.* at 417–18. We concluded that these statements, when read in context with admissible portions of the victim's diary, could be construed "as [the victim] pursuing rape charges against [the petitioner] as a way of taking a stand against all the men who previously took advantage of her." *Id.* at 421. We therefore held that "the jury did not have adequate information to assess the defense theories of consent and improper motive," as the excluded statements "[had] substantial probative value as to both consent and the victim's motive in pressing charges against [the petitioner]." *Id.* at 420–22.

Although this case also involves the exclusion of the victim's journal, Wiecek's reliance upon *Lewis* is inapt. Unlike the journal excerpts in *Lewis*—in which the victim acknowledged "pounc[ing] on" the petitioner and stated her inability to "say no" to sexual advances—D.R.'s poem does not, as Wiecek argues, bolster his defense theories of consent and improper motive. While perhaps conveying shame, the poem neither states nor implies an intention to falsely implicate Wiecek. Moreover, even assuming that the poem is autobiographical, it was written before June 18 and thus does not pertain to the sexual encounter at issue. In upholding the trial court's exclusion of the journal, the Michigan Court of Appeals stated that the poem "had little or no relevancy to the issue of the victim's consent with defendant with regard to the charged incident." *Wiecek*, 2005 WL 292193, at *6. We agree. To the extent that the poem references actual past sexual experiences, it does not speak to the issue of consent, much less to D.R.'s consent *with* Wiecek. *See, e.g.*, *Gordon v. Morgan*, 27 F. App'x 528, 529 (6th Cir. 2001) (concluding that evidence that a victim "had consensual sex with her older boyfriend and that she intended to have sex with [the defendant] in the future" was "not relevant or material to the question of whether [the defendant] committed rape").

Finally, Wiecek, who accords great significance to D.R.'s statement that she had not experienced an alcoholic blackout before June 18, contends that the poem was necessary to test her credibility on the issue of prior blackouts. We find this argument unpersuasive, particularly because D.R. acknowledged having experienced alcoholic blackouts on other occasions. Given D.R.'s testimony, the jury was therefore aware that D.R. had suffered multiple alcoholic blackouts and was entitled to infer that she had experienced such a blackout on June 18. Indeed, we "ha[ve] found 'no

-13-

authority for finding a constitutional violation where cross-examination of a key government witness was only partially limited and where the questioning that was barred was not aimed at eliciting any additional facts.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 348 (6th Cir. 2006) (quoting *Dorsey*, 872 F.2d at 166).

Furthermore, we find that Wiecek's counsel challenged D.R.'s credibility repeatedly throughout trial, eliciting testimony on cross-examination that she drank regularly as a teenager, had consumed various alcoholic beverages in the hot tub, felt slightly intoxicated, and behaved in a sexual manner by removing her bathing suit bottom. When defense counsel asked whether her alcohol consumption affected her memory of the events at issue, D.R. replied that she "[couldn't] make that call" but did not think it had. Thus, by virtue of D.R.'s own testimony on direct- and cross-examination, the jury was aware that she was intoxicated on June 18, that her alcohol consumption might have affected her memory, and that she had significant experience with alcohol as a teenager. *See Stewart*, 468 F.3d at 348 (finding no Confrontation Clause violation when "the information that Petitioner wished to use . . . was already before the jury, in the form of direct testimony from the prosecution's witnesses").

We conclude that, despite the exclusion of the journal, the jury had ample information through the testimony of witnesses and through counsel's arguments to assess the defense theories of consent and improper motive and to evaluate D.R.'s credibility as a witness. We therefore hold that the Michigan Court of Appeals did not unreasonably apply clearly established Supreme Court precedent when it determined that the trial court's exclusion of D.R.'s journal did not abridge Wiecek's Confrontation Clause rights.

IV.

For the foregoing reasons, we reverse the district court's decision granting *habeas* relief.